# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TONI BURCH, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 14-219 |
| v. | )<br>) Judge Sara L. Ellis |
| MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT INC., | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Toni Burch brings this putative class action against Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc. ("Midland Credit") alleging that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (the "FDCPA") by sending Burch a letter that misrepresented the amount of the debt Burch owed. The letter, dated January 14, 2013, indicated that Burch owed $7,373.77, including $6.05 in accrued interest, and noted that interest would continue to accumulate at an annual rate of five percent. Burch contends that because Defendants were not entitled to charge any interest, the January 14 letter violated the FDCPA by containing false statements and constituting an unfair practice. Defendants contend that they were entitled to collect interest—both contractually and statutorily. Now before the Court is Defendants' motion to dismiss the complaint for failure to state a claim [34]. The motion to dismiss is denied because the complaint plausibly alleges that Defendants had no contractual right to assess five percent annual interest and that Defendants failed to comply with the state statute that would allow them to impose interest.

# BACKGROUND[1]

Burch opened a Bank of America Visa US Airways Dividend Miles Platinum Card and used the card to accumulate consumer debt beginning in 2008. In 2009, Bank of America transferred its Visa US Airways Dividend Miles Platinum Cards to Barclays Bank ("Barclays"). In January of 2013, Defendant Midland Funding bought Burch's debt from Barclays. Midland Funding is a "bad debt buyer." Doc. 1 ¶ 4. Midland Funding collects on debts by way of its affiliate, Defendant Midland Credit. Seeking to collect on Burch's debt, Midland Credit sent Burch a letter dated January 14, 2013 stating that the then-current amount of the unpaid debt was $7,373.77. This sum was comprised of a charge-off balance of $7,367.72 and $6.05 in interest that had accumulated since Midland Funding purchased the debt earlier that month. The collection letter further stated that interest would continue to accumulate at a rate of five percent per year. The letter provided Burch with 45 days to pay the debt, but stated that "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater" than $7,373.77. Doc. 1-3 at 2.

On July 10, 2013, the law firm of Blitt and Gaines, P.C. sent Burch a letter on behalf of its client, Midland Funding, seeking to collect on the debt. This letter indicated a "balance due" of $7,367.72. That is, the July 10 letter did not refer to the $6.05 in interest that was included in balance stated in the January 14 letter.

# LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

---

[1] The facts in the background section are taken from the complaint and exhibits attached thereto and are presumed true for the purpose of resolving the pending motions to dismiss. *See Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011). This section also includes other facts submitted by Burch in her response to the motion to dismiss to the extent they are consistent with the allegations of the complaint. *Help at Home, Inc. v. Med. Capital, LLC,* 260 F.3d 748, 752–53 (7th Cir. 2001).

1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The complaint alleges that Defendants attempted to collect interest on a debt when they were not entitled to do so. Specifically, Burch claims that Midland Credit's January 14 letter included $6.05 in accumulated debt. In Count I, Burch alleges that this practice was deceptive or misleading in violation of 15 U.S.C. § 1692e. Count II claims that Defendants' conduct was unfair or unconscionable in violation of 15 U.S.C. § 1692f.

Defendants first contend that the complaint fails to state a claim because Midland Funding was contractually entitled to charge five percent interest. Although Midland Funding did not enter into a contract with Burch, it asserts that when it purchased Burch's debt it stepped into the shoes of the original lender and thereby obtained all rights available to Bank of America. Midland Funding contends that Bank of America and Burch must have entered a contract when the card was originally issued and that the contract must have entitled Bank of America to charge interest of at least five percent. Midland Funding does not, however, summarize any of the terms of Burch's agreement with Bank of America. Nor is it clear at this stage, whether Burch and

3

Bank of America even entered into a written agreement. Defendants do not attach any contract to their motion. Instead, Defendants assert that Burch "does not and cannot dispute that the terms of her credit card were governed by a written agreement." Doc. 36 at 7.

In support of their argument, Defendants submit *Wolfe v. Midland Funding*, LLC, No. 13-cv-351-MJR-PMF, Doc. 71 (S.D. Ill. July 3, 2014) where the district court found for Midland Funding and Midland Credit on summary judgment. However, the decision in *Wolfe* was based on the court's conclusion that the defendants had a contractual right to charge the plaintiff five percent annual interest because Wolfe's underlying credit card agreement with Chase Bank set out interest terms as high as 15.57% and Midland Funding stood in Chase's shoes. *Id.* at 7. Additionally, Wolfe did not raise her argument that the defendants lacked authority to charge interest until her motion for summary judgment. *Id.* Here, on the other hand, Burch alleges from the start that the January 14 letter was false and unfair because Defendants had neither the contractual or statutory authority to charge interest. *See* Doc. 1 at 4, 5.

On the record before the Court, it is impossible to know whether Midland Funding actually had a contractual right to charge Burch interest of as much as five percent per year. Because Midland Funding did not contract directly with Burch, its contractual right would hinge on its predecessors' contract or contracts with Mrs. Burch. But the terms of any contract are a mystery at this point. Therefore, Defendants fail to persuade the Court that the Complaint must be dismissed on the basis that Midland Funding was contractually entitled to charge Burch interest at an annual rate of five percent.

Defendants also argue that they were entitled to charge five percent annual interest pursuant to the Illinois Interest Act, 815 Ill. Comp. Stat. 205. The Interest Act states, in relevant part:

4

> Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor.

815 Ill. Comp. Stat. 205/2. Thus, Midland Funding argues that regardless of whether it had a contractual right to do so, Illinois law entitled it to charge Burch five percent annual interest.

Burch responds that because she had no agreement with Midland Funding, Midland Credit was required to provide 30 days' written notice before it could begin charging her any interest. *See id*. ("In the absence of an agreement between the creditor and the debtor governing interest charges, *upon 30 days written notice to the debtor*, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor.") (emphasis added). Burch contends that Defendants failed to comply with the notice requirement of the Interest Act because the first letter she received from Midland Credit, dated January 14, 2013, stated that she had already incurred $6.05 in accrued interest and indicated that interest would continue to accumulate.

Defendants argue that they complied with the Interest Act because the January 14 letter informed Burch that she had 45 days from the date of the letter to pay the debt. Defendants state that, "it was permissible for Midland to accrue interest from the date of default, Midland just had to give Plaintiff 30 days' written notice before such amount had to be paid." Doc. 40 at 4. Although the January 14 letter gave Burch until February 28, 2013 to pay the debt, the letter also made clear that Burch had already accrued $6.05 in interest. This amount corresponds to six days' worth of interest on $7,367.72 at an annual rate of five percent. The letter also stated that

5

the amount Burch would be required to pay on February 28 "may be greater" than $7,373.77 as a result of accumulating interest. Doc. 1-3 at 2.

The Court finds that for the purposes of the Interest Act, interest is "charged" when it begins to accumulate. Therefore, if an assignee or agent is entitled to charge interest solely by way of Section 2 of the Interest Act and absent a written agreement, the collector must notify the debtor in writing that interest will begin to accumulate on the debt after 30 days if the debt remains unpaid. This reading corresponds with the ordinary meaning of the word "charge." *See, e.g.*, *Dawson v. Bureaus, Inc.*, No. 04 C 1911, 2004 WL 2921871, at *1 (N.D. Ill. Dec. 14, 2004) *aff'd sub nom. Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285 (7th Cir. 2005) (referring to interest being "charged" during the period that it accumulates); *Brimie v. Benson*, 216 Ill. App. 474, 479 (Ill. App. Ct. 1st Dist. 1920) (same); *see also Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187, 115 S. Ct. 788, 130 L. Ed. 2d 682 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."). Here, on the date of Midland Credit's first contact with Burch, interest had been included in her balance and Midland Credit indicated that interest would continue to accumulate. Thus, Burch plausibly alleges that Midland funding had begun charging her interest before it provided any notice.

Moreover, Defendants' reading of the statute—that interest is not "charged" until it has been collected—would render the word "charge" in the Interest Act redundant. *Lysek v. Elmhurst Dodge, Inc.*, 758 N.E.2d 862, 867, 325 Ill. App. 3d 536, 259 Ill. Dec. 454 (2001), *as modified on denial of reh'g* (Oct. 25, 2001) ("As a general rule, courts should avoid interpretations that treat language as surplusage and should instead attempt to give meaning to all of the words used."). The Interest Act states that an agent of a creditor may "charge and collect

interest" thirty days after notifying the debtor. 815 Ill. Comp. Stat. 205/2. Defendants seek to merge these two acts—charging interest and collecting it—into one.

Additionally, Defendants contend that the complaint must be dismissed because Burch cannot use the FDCPA as a vehicle to enforce a violation of state law. Defendants cite *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 287 (7th Cir. 2005) for this proposition. In *Olvera*, "[t]he question presented . . . [was] whether the assignee of a debt in Illinois is free to charge the same interest rate that the assignor—the original creditor—charged the debtor," instead of charging the lower, statutory rate. *Id.* at 286. The Seventh Circuit rejected the plaintiffs' argument that the Interest Act limited the rate of interest even when the debtors and creditors agreed to a higher rate. *Id.* at 288. Defendants rely on a bit of dicta from *Olvera*, wherein the court remarked that Plaintiffs' argument, "is a stretch, and not merely semantically; it makes the federal statute a vehicle for enforcing a state law, and why would Congress want to do that?" *Id*. at 287. However, the complaints in *Olvera* were necessarily and expressly premised on the defendants' violations of the Interest Act. *Id*. In contrast, Burch alleges that Defendants were not legally entitled to collect interest on her debt under either a contract or any statute. Burch is not seeking to enforce the Interest Act via her FDCPA claim; rather Defendants invoke the Interest Act as a defense. Moreover, the Seventh Circuit did not actually rule on the question of whether a plaintiff could premise an FDCPA claim on a breach of the Interest Act, and did not explain the rationale behind this comment. *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 978 (W.D. Wis. 2003) ("when dicta is not supported by reasoning, its persuasive force is greatly diminished"). Thus, *Olvera* does not bar Burch's claim.

Additionally, the Federal Trade Commission's commentary on the FDCPA supports the proposition that a plaintiff may bring an FDCPA claim premised on a violation of state law:

7

> A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (B) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either (A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent.

53 Fed. Reg. 50097-02, 50108 (March 20, 1978); *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 408 (3d Cir. 2000) (quoting the FTC's commentary); *PRA III, LLC v. Hund*, 846 N.E.2d 965, 973, 364 Ill. App. 3d 378, 301 Ill. Dec. 362 (2006) (same).

Finally, Defendants characterize Burch's claim as being premised on the difference between the amount of the debt identified in Midland Credit's January 14 letter that included $6.05 in interest and Blitt and Gaines' July 10 letter that did not demand that Burch pay any interest. Defendants cite several cases for the proposition that the two letters are not inconsistent because a debt collector may seek less than the full amount of the debt without violating the FDCPA. *See Bitticks v. Liberty Acquisitions Servicing*, No. 12-cv-026520RM-MJW (D. Co. Aug. 21, 2013); *Gully v. Van Ru Credit Corp.*, 381 F. Supp. 2d 766, 772 (N.D. Ill. 2005); *Hernandez v. AFNI, Inc.*, 428 F. Supp. 2d 776, 783 (N.D. Ill. 2006). Burch does not contest this point and the Court need not reach it. Defendants' argument misses the mark. The complaint does not and need not hinge on the difference between the two letters. Instead, the complaint alleges a violation of the FDCPA because Midland Credit improperly sought to collect interest.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [34] is denied. Defendants are to file their answer to the complaint by October 10, 2014.

Dated: September 29, 2014

SARA L. ELLIS
United States District Judge